Good morning, Your Honors. Would you please speak into the microphone? Good morning, Your Honors. My name is Roger Al-Zissou. I represent – I'm joined by my partner, David Donahue. I represent Stephen Slesinger, Inc., the appellant who is appealing from an order entered October 5, 2010, by Judge Walter in the district court denying in toto Slesinger's fee application under Section 505 of the Copyright Act on the basis of alleged inadequacy of the substantiation of the fee application and also, in that order, rejecting a special master's recommendation that Slesinger be given leave to submit additional and supplementary materials in support of that fee application. So the first issue I would address is Slesinger claims that that denial altogether of the fee application on the basis of alleged inadequacy of the showing is an abuse of discretion. An abuse of discretion is either a decision based on a legal error or a clearly erroneous fact-finding. The error here is that we have decades of decisions of this Court holding that you just can't deny across the board a fee application for failure, inadequacy of substantiation in the absence of bad faith, which was not an issue here. Well, counsel, may I ask you a question? Yes. The special master described your fee application as overreaching and vague. But you did not formally object to those findings about the district court. Why should you be permitted to challenge those findings now? That's a question raised also by my opponent. The waiver argument is without basis, with all due respect, Your Honor. First of all, the issue of waiver is to be decided by this Court because it was not addressed or decided below. First, there is a rule that the prevailing party with regard to a special master's recommendations need not object to preserve the right to challenge the whatever comes out of the district court on appeal. We cited in our brief the Huff case, which is in the district of Oregon for that proposition. But in addition, we have found a 2005 decision of this Court saying exactly that. The name of that case is United States against Willis. It's at 431 Fed 3rd, 709. In footnote 4, it says exactly that. The prevailing party does not have to object. Now, the only ‑‑ this is a ‑‑ the only operative, dispositive, effective ruling or recommendation by the special master, Fern Smith, here, was the recommendation that Schlesinger be given additional leave to supplement its materials. There are a lot of criticisms by Judge ‑‑ by Master Smith of Schlesinger's application, but these were all in the service of advising Schlesinger of what it would have to do in its supplemented materials. Everything else in that report is not operative. It's not binding. The bottom line was this one recommendation, which was rejected by Judge Walter. His order, if we go back to it, is ‑‑ let me ‑‑ one other thing. The waiver doctrine or rule only applies with regard to fact findings by the special master. And here there are no really fact findings because the only operative aspect of the And the waiver rule only applies to fact findings, not to conclusions of law. And in this Court's decision in Baxter v. Sullivan, which the parties have addressed in their briefing, the question of the sufficiency of the evidence or sufficiency or legal line drawing, even with regard to mixed questions of law and fact, is itself a question of law. The ‑‑ Can I ask you another question, then? Yes. Given that there are more than 1,500 pages of record you submitted, which included balk billing, single entries for work on multiple different matters, and other problems, why wasn't it reasonable for the district court to assume you couldn't reasonably substantiate your application? Well, there are two problems with that, Your Honor. The duty of the district judge is not to assume and it's not to make conclusory findings. If you look at the district court's order, there are three sentences. Before he issued the order, did you ask for a hearing? I know that the law clerk was ‑‑ there was an attempt to call the law clerk, but was there a written request for a hearing or ‑‑ There was no written request. There was a ‑‑ the order of reference said there would be a hearing. There was no hearing. There were objections filed and there was no written request. It was by phone. So wasn't that some kind of a waiver also in that there was ‑‑ I know that, isn't there a rule in the central district that there should be no contact with chambers, and yet there were these attempts to talk to the law clerk? Apparently so. I have to say we were not counsel in this matter in the district court, and whether it was a violation of the local rules, it may have been. I really can't speak to that. But the coming back to the waiver rule does not apply to conclusions of law. And conclusions of law are anything that requires legal line drawing. If you look at the judge's order, he adopts, he purports to adopt the magistrate's, characterization of Schlesinger's papers as vague and overreaching. That is not a fact. The fact is that there are 1,500 pages. The fact that there's billing intensive hours on all those submissions, the fact is that there are verbal descriptions. Whether they're inadequate, vague, overreaching, that requires some kind of a legal characterization or line drawing. So that wouldn't be waived in any event under a waiver rule. But excuse me, counsel. Isn't Judge Gonzalez correct in saying that you neither sought leave to respond nor filed your own objections? I'm not sure. Are you saying you didn't have the duty to do that? There were the matters were fully briefed before the special master. There was a right to file objections, as Disney did, to the recommendations of the special master. There's no obligation at the risk of losing the right of appeal on a conclusion or a legal issue in not objecting and in not having, in not making a written request for hearing. It's just, with all due respect, that's just not in the cases. That is not part of the waiver doctrine. Well, counsel, getting to the merits, isn't this a failure of a burden of proof? Isn't that what we're dealing with here? It could be, but the district judge never did. There's no evidence of having gone through those 1,500 pages. I have to add that the 1,500 pages, with regard to those, the only showing before the special master, and in this Court, is to cite nine entries, 15 entries, I'm sorry, on nine pages as examples. And the rest is all epithets. But this was the second opportunity that your client had, was it not? And therefore, Judge Walter said, well, you don't get a third bite at the apple. No. That's my opponent's argument. No. There was only one bite at the apple. Initially, Schlesinger filed a motion for attorney's fees following the traditional standard practice, which has been approved by this Court and referred to in the traditional CAT association case. It also was approved by this Court in Fogarty, where the parties, the prevailing party first makes a motion to the district judge to see whether fees are even going to be possible. Instead of inundating the Court with 1,500 pages and all the other burdens of proof and forcing that burden on his opponent. And then the judge is supposed to say, you know what, I'm going to award fees. Submit. Submit your details on the amount. And that's what Schlesinger did. There was no opportunity in having made that choice to seek the determination of liability first. Second, so Schlesinger proceeded, and they filed one application in the amount of, I think it was 3,000,009, and the 1,500 pages and everything else. That was the only opportunity. That's the only briefing in this case. There was one bite, and the upshot of that was a recommendation to supplement it. That's what happened here. This is not a ‑‑ you just ‑‑ the decisions of this Court tell us the judge has to do more than repeat something conclusory. We're told by, in traditional CAT, quoting Judge O'Scanlan, that the duty of the district judge is to make ‑‑ delve into these materials. And the inability to come out with an exact number is not an excuse for denying the whole application. Some effort must be made, and that's almost a quote from Gracie, which is repeated also in Lyon against Chase Bank. In addition ‑‑ Mr. Counsel, isn't it conceivable that the judge, in fact, did scan or even read all 1,500 pages and reached the conclusion that the burden of proof failed, that there wasn't a significant support for the claim? It is. It's totally conceivable. But we know he spent three sentences on this in his order. That's all we have. We know that block billing is not an excuse. But the matter was submitted to him sometime before the order, was it not? Well, there was no hearing. And it was a matter of 10 or 11 days. No, this all happened within a two‑week period. The special master signed her order on September 10th, 2010. And it's on October 5th. October 15th. Five weeks. Okay. Judge Walter issued his order. I got it. Okay. It's five weeks. But there are certain rules, legal rules. The relatedness or the difficulty of being able to tell whether the proper work is covered in the application is not an excuse for completely denying the fee application. It is a basis to reduce it, and it can be in a rough sense. Block billing is also not an excuse. It's ironic in the judge's order here, he says that Schlesinger had ample opportunity to brief and supplement. Well, as I've just explained, there was no opportunity to supplement. The papers are called supplemental submission by Schlesinger because that's after the court was willing to take the details on the fees. There was a submission made with the details, and that was called ‑‑ that was the only opportunity. It's ironic that that's called supplementation. The original motion didn't contain any information regarding fees. No, nothing. No, zero. It did have a statement, a most inadvisable statement, where counsel said that the fees were going to be $17 to $19 million. But, you know, I'm judging this with hindsight. I think counsel was afraid to say anything that would be ‑‑ rule anything out when they came to doing their homework, which they later did. It was substantially reduced to the number of 3.9 million. So we have this third bite at the apple statement by Judge Walter, for which there's no support. No support. It's not only clearly erroneous, it's clearly false. We have vague and overreaching, which it certainly doesn't evidence. It doesn't give you any comfort as a court of appeals that this judge has done what, as Judge O'Scanlan has said in Gracie, which was a decision under the Lanham Act, that the same approach was taken. And, by the way, that decision is quoted in traditional cat. It's quoted in Lion against Chase Bank in footnote 11. You have to throw all these things aside and just say that this is the kind of performance and the kind of record that the district judge would provide to the court of appeals to justify this complete denial of fees in spite of the special master's recommendation. So the bottom line is the district judge abused his discretion. In so many ways. All these reasons are not enough to deny the fee application entirely. They're the basis for reducing it. They're the basis for doing it severely, but we've just not given a chance. That was expected and recommended. I'm going to try to say what's left. You may do so, counsel. Thank you, Your Honor. Good morning, Your Honors. Daniel Petruccelli with Cassandra Cito for Disney Enterprises. Let me address first the issue of the review of the special master's report. Rule 53F was overhauled in 2003, and we were operating under the new version, which does not require a hearing on objections. The rule states that if a party has an issue with a referee's report, then either move to modify or adopt or object, and you have 21 days to do so. We objected on the 20th day, and SSI elected not to object at all. Wasn't there the original reference, though? Didn't Judge Walter say there would be a hearing? No. What Judge Walter said, consistent with the new rule, Rule 53, that no longer requires hearings. The old rule did. The new rule said you needed an opportunity to be heard, and the advisory committee note specifically says that that opportunity to be heard is satisfied through written submissions. So Judge Walter wrote, and I'm paraphrasing, but I think I'm pretty close, that the court shall set hearings on objections, meaning consistent with the new rule, the parties cannot set such a hearing. The court, if there's going to be a hearing, only the court can set the hearing. And indeed, prior to this occasion, when Schlesinger elected not to object, we had another reference report that came out from Judge Smith. And she made a certain recommendation to then-Judge Cooper, who's since passed away, and both sides objected. Schlesinger objected. We objected. No hearing. And the judge ruled. So Schlesinger was fully aware of the procedure. And moreover, even after we objected, Schlesinger did not file an ex parte application or seek to contact the court in some formal way to even request a hearing on our objections. What it did is it called the law clerk, which was in direct violation of Judge Walter's rule, that said no one can contact the court clerk or the court staff except by formal application to the court. And obviously, sophisticated lawyers have no expectation to rely on the fact that they made a voicemail to a law clerk that they weren't supposed to do in the first place and didn't get a response and now use that to justify, you know, their conduct. They made a deliberate election not to object. And think about that. If what they were seeking by not objecting is that Judge Smith's report be adopted in its entirety, well, that report contained all those extreme criticisms of the billings, which he ---- But let me just ask a question. It seemed to me that the special master held that Schlesinger was entitled to recover some of its fees if it could separate out the meritorious claims in its billing records. Wasn't the district court obligated to address that holding before it rejected the entire fee application? Well, the district court said that the fee application was vague and overreaching. The district court specifically stated that it had considered the moving, opposing, reply papers, the report and recommendations, and our objections. And our objections focused on the fact that there was no finding of entitlement by Judge Smith. If you read Judge Smith's report and recommendation, what she asked for is another round of submissions, and then she concluded that if I find that Schlesinger is entitled to fees, should I find that Schlesinger is entitled to fees, she never made a determinative finding. No, but she indicated that was possible. She certainly was heading in that direction, Your Honor. And that underscores two points that I would like to get to that relate to your question. Before you do, counsel, is the district court's finding here independent of Judge Smith's finding? In other words, does Judge Smith have to clearly state one way or the other, either that he's entitled to fees or not, before Judge Walter can make a decision? No. She's making a report and recommendation of her various findings, and ultimately the decision rests with him whether to agree or disagree, modify or not. And she made no specific finding that Schlesinger was entitled, although she was tentatively inclined to consider giving them fees, if they could first meet their threshold burden approving their fees. And that was the big problem that she had. The bills were in such a mess that she... But to what extent does Judge Walter have to defer or to take into account specific passages, let's say, from Judge Smith's findings? Well, first of all, he can review the special master's report de novo. Okay. The only... And is there enough in the record reviewing de novo to substantiate his... Absolutely. And that's what I wanted to get to. And the court, of course, can look at the special master's findings. And what she found, and it's footnote 9 of page 14 of her report, which is excerpt of record 16. She found... She said that the special master does not conclude that Disney's claims were frivolous, motivated by ill will, or unreasonable. To the contrary, the record reflects that there is substantial ground for difference of opinion. She's now quoting the district court on the district court's substantive rulings on the complex termination claims, really cases of first impression that were litigated and ultimately these were the two copyright claims that Schlesinger prevailed on. And so both the district court and the special master were observing that with respect to all the fogerty factors suggested by the Supreme Court, that Schlesinger met none of them with the exception of one. And even then she was unsure. And the one that she identified, were she to award these, she would be relying solely on the fact that they were the prevailing party on the copyright claim. But her conclusion is Schlesinger may also be entitled to its attorney's fees and costs related to work performed on the Hunt and Milne termination notice issue. And then she goes on to say that they should be permitted to submit an amended record of attorney's fees and costs. And what the district court did is he reviewed this report, including the fact that she was finding in favor of Disney on all the fogerty factors, except that Schlesinger had won on two claims. The district court was well aware that Disney had won on every other claim in the case, some 12 or so, including two copyright claims, including a number of state law claims that were tossed out on the basis of collateral estoppel based on extreme litigation misconduct. The court was well aware of all these circumstances. Let me just ask a question. How do you distinguish the cases, such as the Catt case? Right. That hold that fee awards should not be denied entirely because of insufficient documentation? And that was the last point I wanted to get to. And that the Catt case comes from Judge O'Hanlon's opinion in the Gracie case, which dealt with the Lanham Act. And what the Gracie case dealt with was the question not whether a party who's entitled to fees must always get some award. The Gracie case discussed the question of apportionment. It was a case where the court determined definitively that the prevailing party had met all the factors under the Lanham Act and were entitled to fees. And then what happened there is the court was having difficulty separating out the covered fees that related to the Lanham Act from those fees that did not relate to the Lanham Act. The district court couldn't make heads or tails out of it, and so the district court granted the entirety of the fees, both on the covered claims and the uncovered claims. That went up to this court. And Judge O'Scanlan ruled that, no, no, no, that's not what we do in a case where there's an entitlement to fees and the question is apportionment between covered claims and non-covered claims. And, in fact, the holding in that case is that the district court must make an attempt to come up with some method to apportion out the uncovered fees from the covered fees in lieu of what the district court did, which was to award all the fees. Why shouldn't that apply in this case? See, now we go to Gilbreth, which is the principal case, and it then took Gracie and applied Gracie to a claim for attorney's fees under the copyright statute. And in Gilbreth, the opposite happened. The district court, faced with the same situation, it had definitively determined that the prevailing party was entitled to fees, but got a fee application that lumped in all kinds of fees with respect to unrelated work. The district court denied the fees in total. That went up to this court, and this court reversed. And what this court stated is where a district court must apportion fees, the impossibility of making an exact apportionment does not relieve the district court of its duty to make some attempt to adjust the fee award in an effort to reflect an apportionment. Again, the issue here was once entitlement has been determined, then if you have an issue of apportionment, the district court can't grant all the fees or can't deny all the fees. It's got to make an attempt to apportion. Our situation goes way beyond apportionment. Apportionment was just only one of the items that Judge Smith noted. Did Judge Smith find entitlement? She did not find entitlement. She said she wanted to see, she tentatively included, she concluded that she seemed headed in that direction, and she made clear based only on the fact that Schlesinger had prevailed, but was reserving final judgment on that issue until the bills came in. And she was going to give them one more time. But isn't the inference that Schlesinger was entitled, but she just couldn't figure out how much because there were, because of the mass of bills that were submitted and that she wanted them apportioned? Well, I mean, she certainly stopped short of making that definitive finding because it's very clear in her language. But wouldn't that be a reasonable inference to draw if she's giving them the opportunity to submit more bills? I think that's a reasonable inference to draw that if they can come in with proper bills to prove their fees, and this is a situation where she had great doubt and she thought their filing bordered on bad faith and she instructed them in the next filing if permitted, it needs to be submitted in good faith. So she had questions, severe questions, which is maybe why she hedged. Did she find bad faith? She did not find bad faith, although she said specifically that their next submission must be made in good faith. So that's the only reason that I suggested that that might have been an issue. And there were severe overreaching problems with these bills. They even went with respect to other cases. So she was extremely troubled by all of this. In any event, the district court, and this court can affirm the district court's own independent review of the record. And if you read the report here, and all of this was known to the district judge, again, you have a situation where the submissions of bills were extremely overreaching. And following up on a question asked about whether this is the second or third bite, when the original motion papers were filed, both sides filed for attorney's fees. We filed, Disney filed on the ones we won, and Schlesinger filed. They asked for $14.5 to $17 million in fees, and they provided no backup. In our opposition to their motion, we said that was inappropriate, that they needed to back up the bills, and these bills were, you know, these fees were outrageous. In our motion, we provided the backup. In their reply brief, in their reply brief, they still did not provide any backup or ask for leave of court in order to provide the backup, even though we had specifically objected to it in our opposition. Then what Judge Cooper then did, or it might have been Judge Walter by then, forgive me, sent the whole thing off to Judge Smith. And then we had a two-and-a-half-hour hearing, but before that hearing, Schlesinger's lawyers, and it was not Mr. Zissou, said, look, I need to clean up our filing and I want to submit new materials, and they submitted new materials, which brought the fee request down from $17 to $3.9 million, but were just jumbled across a number of different matters and had all the criticisms that Judge Smith faced, and we had a two-and-a-half-hour argument. So they were on complete notice by the time that they made that submission that they were going to have to do a whistle-clean submission, given that we had just litigated this in the district court, and given that we had provided detailed spreadsheets and all kinds of other specific materials identifying our fees. And nonetheless, they took another shot at trying to get inflated fees. The judge said no, but wanted to give them another chance, and it was totally within the discretion of Judge Walter to deny that. Thank you, counsel. Your time has expired. Thank you. Mr. Zissou, you have some reserved time. Not much at this point. First of all, the order of the district court was really, I said 10 days, it was really 11 days after the expiration of the 21 days in which Schlesinger would have had a chance to file objections. So it came down on October 15, but that was only 11 days after the 21-day objection period ended. Second, there is no word in the special master's report or in the district judge's three-line opinion here that Schlesinger's submission was devoid of any recoverable fees, only that Schlesinger had overreached. And under the traditional cap, which is also called the Galbraith case, and Lyon against Chase Bank, that is not a basis to deny entirely the fee application. It should be really remanded for the district judge to do the job that is required by a district court. And it's not that the prevailing party must always obtain an award, but the prevailing party must always obtain an evaluation of its submission of the kind that comports with what's required by the district court. Thank you, Your Honor. Your time has expired. The case just argued will be submitted for decision.
judges: Gonzalez, Nelson, O'Scannlain